IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROLAND STUCKE** | : |
| **Plaintiff,** | : CIVIL ACTION |
| v. | : 12-6216 |
| **CITY OF PHILADELPHIA,** | : |
| **Defendant.** | : |

### MEMORANDUM OPINION

**Tucker, C.J.**                                                                                                                 **May 11, 2015**

Plaintiff Roland Stucke ("Stucke") brings this action against Defendant City of Philadelphia (the "City"), alleging claims for disparate treatment racial discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* Before this Court is Defendant's Motion for Summary Judgment (Doc. 34), Plaintiff and Defendant's Statement of Stipulated Material Facts (Doc. 34-1), Plaintiff's Response in Opposition to Defendant City of Philadelphia's Motion for Summary Judgment (Doc. 37), Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment (Doc. 40), and Plaintiff's Sur-Reply in Further Support of His Response in Opposition (Doc. 45). Upon careful consideration of the parties' briefs, exhibits, and all other papers herein, and for the reasons set forth below, this Court will ***grant*** Defendant's Motion for Summary Judgment.

### I.    FACTUAL BACKGROUND

Because the Court writes primarily for the parties, the Court sets forth only the facts that are relevant to its conclusion. In 1983, the City hired Plaintiff Stucke, a white male, as a

Correctional Officer Trainee and promoted him to Correctional Officer later that year. Statement of Stipulated Material Facts ¶¶ 1–2. In 1990, Stucke transferred to PhilaCor, an industries shop program within the Philadelphia Prison System ("PPS") that is responsible for training inmates to gain transferable job skills. *Id.* at ¶¶ 3–4. PhilaCor is managed by a Correctional Industries Director ("Director") and a Correctional Industries Assistant Director ("Assistant Director"). The Director of PhilaCor reports directly to one of the PPS Deputy Commissioners. Brooks Dep. 32:10–11, May 13, 2014.

In 2004, Stucke was temporarily promoted to Industries Shop Supervisor in charge of PhilaCor's General Products Shop. Statement of Stipulated Material Facts ¶ 5. This promotion became permanent in 2005. *Id.* Stucke's direct supervisor at the time was Assistant Director Jim Filler ("Filler"). *Id.* at ¶ 6. The job specification for Assistant Director provides that the position's minimal acceptable training and experience is as follows:

> completion of a bachelor's degree in business administration, education, or a related field at an accredited college or university, and two years of supervisory experience in a correctional or equivalent private or public industries program; or, any equivalent combination of education and experience determined to be acceptable by the Office of Human Resources.

*Id.* at ¶ 8. Filler, a white male, did not have a Bachelor's degree. *Id.* at ¶ 6.

In February 2009, Filler passed away. As a result, the Director at the time, Director Eleanor Doherty, recommended to PPS Commissioner Louis Giorla and Deputy Commissioner Reginald Hammond that Stucke be promoted to Acting Assistant Director. Doherty Dep. 37:1–4, August 14, 2014. Stucke was promoted to the Acting Assistant Director position in mid-2009, although he did not have a Bachelor's degree. Statement of Stipulated Material Facts ¶ 9. He believed that any degree requirement for the position would be waived since Director Filler also

2

did not have a Bachelor's degree when he had held the position. Stucke Dep. 33:15–22, June 24, 2014.

When Stucke assumed the position of Acting Assistant Director, Director Doherty observed a difference in Deputy Commissioner Hammond's involvement in PhilaCor. Doherty Dep. 43:10-45:7. Director Doherty testified that Deputy Commissioner Hammond began micromanaging and questioning her about seemingly insignificant minutiae relating to the daily operations of the shops. Doherty Dep. 44:1-46:3.[1] According to Director Doherty, Deputy Commissioner Hammond requested that a computer be removed from Stucke's work area in the general products plant. Doherty Dep. 45:8–20. The computer was taken to another area where "it was not put to any use. It sat in a room." Doherty Dep. 46:17–19.[2]

In the fall of 2009, Director Doherty participated in a meeting with Deputy Commissioner Hammond. In that meeting, Deputy Commissioner Hammond explained that he was going to require a Bachelor's degree for the Assistant Director position and post the position publicly. Doherty Dep. 47:21–48:3. Following this meeting, Director Doherty informed Stucke that a Bachelor's degree would be required for the Assistant Director position. Doherty Dep. 48:5–9. According to Director Doherty, Stucke responded that he was not going to continue the job if he had no chance of ever getting it permanently. Doherty Dep. 50:12–13. As a result, on November 16, 2009, Stucke resigned as Acting Assistant Director and resumed his previous post as Industries Shop Supervisor. Statement of Stipulated Material Facts ¶ 10.

---

[1] Deputy Commissioner Hammond disputes that he began micromanaging PhilaCor or that his level of involvement changed following Filler's passing. Hammond Dep. 51:2-10, Aug. 18, 2014.

[2] Director Doherty explained that Deputy Commissioner Hammond's decision to move the computer may have been based on his mistaken understanding that the computer was intended for the Assistant Director. Doherty Dep. 45:16–18.

3

Following Stucke's resignation, Director Doherty needed to fill the vacant Acting Assistant Director position. Consequently, she offered the position to Steven Brooks, a black male who, like Stucke, also did not have a Bachelor's degree. Doherty Dep. 51:10–20; Statement of Stipulated Material Facts ¶ 11. Following the initial interviews for the Acting Assistant Director position, Brooks had been Deputy Commissioner Hammond's second choice candidate after Stucke. Stucke Dep. 221:3-7. Director Doherty informed Brooks that he was only offered a temporary position. Doherty Dep. 51:13–52:5. On or about December 23, 2009, Brooks was promoted to Acting Assistant Director, thereby becoming Stucke's direct supervisor. Statement of Stipulated Material Facts at ¶ 11. Brooks retained the position of Acting Assistant Director for three years. Brooks Dep. 65:9–11. In March 2014, Brooks was promoted to the position of Correctional Industries Director—the Director of PhilaCor. *Id.* ¶ 11.

Shortly after Brooks became Acting Assistant Director, Stucke confronted him about the fact that he did not have a Bachelor's degree:

> A. I told him, again, you have—you have no college, I have no college, okay. That doesn't make no sense that you got the job over I got the job. In other words, I didn't have college, you don't have college. We're both co-workers. Now I did the job for eight months, now you're coming along doing the job.
> Q. Did you tell him where you were gonna file this complaint?
> A. No.
> Q. Okay. Did you say E.E.O.C.?
> A. No.
> Q. Or the commission?
> A. I told him I'm gonna file a lawsuit.
> Q. File a lawsuit?
> A. Yes.
> Q. Okay. Did you say why you were gonna file a lawsuit besides what you already said about the college stuff?
> A. That was it.
> Q. Did you say something along the lines of, you know, you were promoted because of your race and this is about race and . . . I'm gonna file a lawsuit, because—

        A.     No, no.
        Q.     — of racial discrimination?
        A.     Not at the time, no.

Stucke Dep. 258:5-259:10. Significantly, Stucke did not complain about race discrimination.

After Brooks assumed the position of Acting Assistant Director, Stucke claims that he would "sneak" into Stucke's work area "like a church mouse." Stucke Dep. 279:09–17. Stucke explained that before unlocking and entering the door to Stucke's work area, Brooks would quietly hold his keys so that they would not make any noise. Stucke Dep. 279:23–24. Stucke admits that Brooks was entitled to visit his work area, but he was offended because he had already provided Brooks with work reports. Stucke Dep. 366:1–22.

On one occasion, Stucke recalls complaining to Brooks about one of his unannounced visits. Stucke Dep. 365:20–366:22. According to Stucke, he told Brooks, "[I]nstead of you coming over harassing me . . . maybe you should watch what you're doing over there by sexually harassing the females." Stucke Dep. 366:19-367:21.[3]

On April 28, 2010, Brooks and Stucke had an argument after Brooks made another unannounced visit to Stucke's work area. Pl.'s Resp. in Opp'n, Ex. K at 3. According to Stucke, Brooks entered the shop while he was watching a training video on the television. *Id.* The inmates in the shop were not working at the time because they were waiting for a shipment to arrive. *Id.* Brooks questioned Stucke's production and claims that Stucke began shouting and cursing at Brooks. *Id.* at 2.

---

[3] According to Stucke, prior to making this statement, he had just heard from a coworker "that the first month that [Brooks] was there that he sexually harassed both of our secretaries. Called one an apple bottom butt and the other one - - he wants to rub his fingers through her long hair." Stucke Dep. 366:12-17.

5

In response to the April 28, 2010 argument, Brooks served Stucke with an Employee Violation Report ("EVR") on or about May 6, 2010. Statement of Stipulated Material Facts ¶ 12. Consequently, Stucke was removed from PhilaCor effective September 1, 2010, suspended for ten work days, and demoted to the position of correctional officer. *Id.* ¶ 12; Pl.'s Resp. in Opp'n, Ex. K at 2. City employee Kevin Gallagher, a white male, replaced Stucke as the supervisor of the General Products Shop. Statement of Stipulated Material Facts ¶ 12.

While serving in his demoted position of correctional officer, Stucke applied for several steady-shift posts (i.e. posts that have Monday through Friday schedules). *Id.* at ¶ 14. Stucke submitted applications on September 9, 2010, January 19, 2011, May 9, 2011, and December 8, 2011. Def.'s Reply Mem., Exs. N, O, R, and Q. Stucke did not receive any of the steady-shift posts to which he applied.

Stucke appealed his demotion to the Philadelphia Civil Service Commission (the "Commission"). Statement of Stipulated Material Facts ¶ 15. The Commission granted Stucke's appeal, reversed his discipline, and reinstated him to the position of Industries Shop Supervisor with back pay. *Id.* ¶¶ 16–17. The City appealed the Commission's decision to the Philadelphia Court of Common Pleas, but the court denied the appeal. *Id.* ¶¶ 18–19. As a result, Stucke was restored to the position of Industries Shop Supervisor with back pay. *Id.* ¶ 20. Stucke was not reassigned to the Industries Shop Supervisor position in the General Products Shop, but instead was assigned to the Barricade Shop. *Id.* ¶ 20. At that time, Gallagher was still the supervisor of the General Products Shop. *Id.*

No City employee made any discriminatory remarks to Stucke about his race or about Caucasians generally. *Id.* ¶ 21; Stucke Dep. 173:12–20. Stucke did not believe that there were racial tensions in PhilaCor. Stucke Dep. 173:7–9. At no time did Stucke file a complaint alleging

6

discrimination or retaliation with the City's Equal Employment Opportunity Unit, or with any other City department. Statement of Stipulated Material Facts ¶ 27.

On February 14, 2011, Stucke filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission. *Id.* ¶ 28. Stucke alleged that he was discriminated against because of his race and retaliated against for intending to exercise his Title VII rights. *Id.* ¶ 28. On November 3, 2012, Stucke filed this action against the City alleging hostile work environment in violation of Title VII (Count One); disparate treatment in violation of Title VII (Count Two); hostile work environment and disparate treatment in violation of the Pennsylvania Human Relations Act (Count Three); and retaliation (Count Four).

## II. STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "In considering a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

"[T]he nonmoving party must point to some evidence in the record that creates a genuine issue of material fact. . . . [It] cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Rather, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record," or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

### III. DISCUSSION

Defendant argues that it is entitled to summary judgment as to Plaintiff's claims for disparate treatment, hostile work environment, and retaliation under Title VII and the PHRA. "The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Weston v. Pennsylvania*, 251 F.3d 420, 426 n. 3 (3d Cir. 2001) (citations omitted). Accordingly, this Court will address each claim in turn.

#### A. Disparate Treatment under Title VII and the PHRA

Stucke claims that he was constructively discharged. Pl.'s Sur-Reply at 2–3.[4] Defendant counters that Stucke's claim fails because he cannot make out a prima facie case of disparate treatment racial discrimination. This Court agrees with Defendant.

Under Title VII, an employer may not "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). For claims of disparate treatment race discrimination under Title VII, courts use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803–05 (1973). Under this framework, a plaintiff must first establish a *prima facie* case. The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802. "The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely

---

[4] In his Sur-Reply, Stucke claims for the first time that his demotion to corrections officer constituted disparate treatment. Pl.'s Sur-Reply at 3. The Court declines to address a new argument raised for the first time in a sur-reply brief. *See United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues.").

8

a pretext for discrimination, and not the real motivation for the unfavorable job action." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

To establish a *prima facie* case of racial discrimination, a plaintiff must show that: 1) the plaintiff belongs to a protected class; 2) he was qualified for the position; 3) he was subject to an adverse employment action despite being qualified; and 4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

The parties dispute the third factor in the prima facie case—whether Stucke was subjected to an adverse employment action. Stucke asserts that he suffered an adverse employment action because he was constructively discharged when he was informed that the Assistant Director position would require a Bachelor's degree. Defendant counters that Stucke fails to satisfy the requirements for a constructive discharge claim.

Courts "employ an objective test to determine whether an employee can recover on a claim of constructive discharge . . . . [and must therefore] determine whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502–03 (3d Cir. 2010) (quoting *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)) (quotations and citation omitted). Relevant factors include "whether the employer (1) 'threatened [the employee] with discharge' or 'urge[d] or suggest[ed] that she resign or retire,' (2) 'demote[d] her,' (3) 'reduce[d] her pay or benefits,' (4) 'involuntarily transferred [her] to a less desirable position,' (5) altered her 'job responsibilities,'" or (6) gave 'unsatisfactory job evaluations.'" *Colwell*, 602 F.3d at 503 (quoting *Clowes v. Allegheny Valley Hosp.*, 991 F.2d

9

1159, 1161 (3d Cir. 1993)). The Third Circuit has also noted that "in most situations, a prerequisite to a successful constructive discharge claim is that the plaintiff attempted to explore alternatives before electing to resign." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998) (concluding that no constructive discharge had occurred partly because plaintiff did not attempt to explore any alternatives before resigning).

Here, Stucke resigned from the position of Acting Assistant Director soon after he was told that the position of Assistant Director required a Bachelor's degree. Stucke argues that he had "no choice" but to step down, because Director Doherty told him that Defendant would "get somebody from the outside for the position." Pl.'s Sur-Reply at 2; Doherty Dep. 47:21–48:3. He essentially argues that he was compelled to resign as Acting Assistant Director because he had no prospect of being promoted to the permanent position and believed that ultimately he would have been demoted to Industry Shop Supervisor receiving a decrease in pay and altered job responsibilities. *See* Pl.'s Sur-Reply at 2.

However, Stucke has failed to demonstrate that his work conditions were sufficiently intolerable to constitute constructive discharge. The Court notes that there is no record evidence that anyone encouraged Stucke to resign or threatened him with discharge. *See Colwell*, 602 F.3d at 503. Nor was he demoted, involuntarily transferred, or given unsatisfactory job evaluations. *See id.* There is no evidence that prior to his resignation his job responsibilities as Acting Assistant Director were altered or that his salary and benefits were reduced. *See id.* Moreover, Stucke never explored alternatives to resigning before concluding that resignation was his only option. *See Clowes*, 991 F.2d at 1161 (stating "a reasonable employee will usually explore . . . alternative avenues thoroughly before coming to the conclusion that resignation is the only option"). In fact, Stucke stated: "I was told I need college . . . . They knew I wasn't getting

college. And with that, I went back to my old position." Stucke Dep. 219:19-23. Stucke's analysis of his options ended upon learning from Director Doherty that the Assistant Director position would be posted in an effort to find a candidate with a Bachelor's degree.

Stucke argues that his demotion or discharge from the position of Acting Assistant Director *would have* resulted in less pay and a change in his job duties. Pl.'s Sur-Reply at 2. The operative inquiry regarding these factors, however, is whether any reduction in pay or alteration of job duties precipitated Stucke's resignation. Stucke has not produced any evidence that such changes precipitated his decision to resign.

Although Director Doherty told Stucke that the Assistant Director position would be posted, Stucke was not told that the posting was imminent. Nor is there any evidence that the position had been posted or that he applied for it.[5] Stucke has failed to present evidence to support a conclusion that he was compelled to resign when he did. Accordingly, Stucke's disparate treatment claims fail.

### B. Hostile Work Environment under Title VII and the PHRA

Stucke next asserts a claim for hostile work environment. To establish a claim of hostile work environment based on race, a plaintiff must show the following:

> (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)). The Supreme Court has explained,

---

[5] Indeed, Brooks retained the position of Acting Assistant Director for three years. Brooks Dep. 65:9–11.

11

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Title VII does not provide relief for "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [race]-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotations omitted). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.*

There is "a bright-line distinction between discrete acts,[6] which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitations period or they will not support a lawsuit." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006); *Helvy v. Allegheny Cnty.*, No. 2:14-CV-01686-TFM, 2015 WL 672262, at *3 (W.D. Pa. Feb. 17, 2015) (stating that plaintiff "cannot simply 'cobbl[e] together a number of distinct, disparate acts'—the same acts that make up [a] disparate treatment claim—and label it 'a hostile work environment'") (quoting *Brantley v. Kempthorne*, No. CIV.A. 06–1137ESH, 2008 WL 2073913, at *8 (D.D.C. May 13, 2008)). Hostile environment claims by nature involve repeated conduct. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

---

[6] "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . . constitute[] . . . separate actionable 'unlawful employment practice[s],'" whereas "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 117 (2002).

12

Here, Stucke contends that he endured a hostile work environment because Brooks targeted him by (1) making unannounced visits to his work area; (2) confiscating his work computer without cause; (3) issuing him an EVR after they argued on April 28, 2010; and (4) refusing to award him the steady-shift post positions to which he applied while demoted. Pl.'s Resp. in Opp'n at 18–19. In response, Defendant avers that the above conduct amounts to "isolated incidents" and points to the absence of evidence of racial animus. Def.'s Reply Mem. at 18.

Stucke's hostile work environment claim is based in part on instances where Defendant failed to award him steady-shift post positions. However, such instances cannot support the foundation of his hostile work environment claim because they constitute discrete acts. *See O'Connor*, 440 F.3d at 127. Likewise, this court will not consider Stucke's complaint that his discipline was discriminatory, because disparate discipline constitutes a discrete claim. *See Davis v. Nat'l R.R. Passenger Corp.*, 733 F. Supp. 2d 474, 491 (D. Del. 2010) (setting forth the standard for disparate discipline claims); *Dempsey v. Delaware, Dep't of Pub. Safety*, 579 F. Supp. 2d 616, 622 (D. Del. 2008) (same), *aff'd*, 359 F. App'x 347 (3d Cir. 2009).

The remaining conduct—consisting of Brooks's unannounced visits and the removal of the computer—is not extreme enough to constitute a hostile work environment. *See Faragher*, 524 U.S. at 788. ("Conduct must be extreme to amount to a change in the terms and conditions of employment."). Hostile work environment claims involving comparable conduct have been rejected. *See, e.g., Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 415–16 (E.D. Pa.) (concluding that the employer's conduct was insufficiently severe where the plaintiff's supervisor highly scrutinized the plaintiff's work performance and made sporadic, facially neutral comments) *aff'd*, 587 F. App'x 731 (3d Cir. 2014); *Baker v. City of Philadelphia*, No.

13

CIV.A.05-1562, 2009 WL 3579815, at *19 (E.D. Pa. Oct. 27, 2009) (concluding that the employer's conduct was insufficiently severe where the employer verbally reprimanded the plaintiff and scrutinized his work performance), *aff'd*, 405 F. App'x 599 (3d Cir. 2010). This Court is mindful of the evidence that Brooks apparently singled out Stucke when conducting these unannounced visits, and that Brooks's visits were not the norm. Nevertheless, the conduct that occurred here is insufficiently severe or extreme to constitute a hostile work environment. Accordingly, Plaintiff has failed to establish a prima facie case for hostile work environment.

### C. Retaliation under Title VII and the PHRA

Stucke asserts that he suffered unlawful retaliation as a result of his complaint to Brooks that he would be filing a lawsuit.[7] Defendant counters that Stucke failed to engage in protected activity required for a claim of retaliation.

Title VII provides:

---

[7] Stucke also claims that he engaged in protected activity when he filed his complaint with the PHRC on February 14, 2011. *See* Pl.'s Sur-Reply at 4. Stucke makes this argument for the first time in his Sur-Reply brief. The Court declines to address a new argument raised for the first time in a sur-reply brief. *See United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."). Even if Stucke had preserved this argument, he failed to provide sufficient evidence supporting his *prima facie* case of retaliation. Stucke asserts that the denial of his May 9, 2011 and December 8, 2011 applications for steady-shift posts constitute adverse actions, but he fails to provide the date when his applications were denied. Stucke also avers that his May 2012 assignment to the Barricade Shop following his successful appeal to the Commission constituted an adverse action. For all three of these alleged adverse actions, Stucke fails to indicate evidence supporting a causal connection between his filing of the PHRC complaint and these alleged adverse actions.

Next, in his Response in Opposition, Stucke claims for the first time that he admonished Brooks for making inappropriate sexual comments about two female employees. *See* Pl.'s Resp. in Opp'n at 14-15. He does not, however, expressly assert in his Response or Sur-Reply that his actions constituted protected activity. He merely details his conversation with Brooks, implying without making the argument, that he was subjected to retaliation after highlighting Brooks's purported sexual harassment of female workers. Stucke's suggestion here is distinct from the retaliation claim alleged in his Second Amended Complaint. In considering a motion for summary judgment, this Court need not address a particular claim that was not included in the complaint. *See Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 n.5 (D.N.J. 2008) (refusing to consider a breach of contract claim that was distinct from the breach of contract claim alleged in the complaint).

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show the following: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

With respect to protected activity, the employee must hold an objectively reasonable, good faith belief that the activity he or she opposes is unlawful under Title VII. *Id.* at 341. "'Opposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to management.'" *Id.* at 343 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). "When deciding whether a plaintiff has engaged in opposition conduct, we look to the message being conveyed rather than the means of conveyance." *Curay-Cramer*, 450 F.3d at 135 (citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)). The employee must, at least by context, identify the unlawful employment practice and the employer. *Id.* "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Id.*; *see, e.g.*, *Barber*, 68 F.3d at 702 (holding that an employee's letter to his employer's human resources department did not constitute protected activity because it did not specifically complain about the alleged unlawful practice and was "just too vague to support a finding that his job was eliminated because he engaged in behavior that was protected under the ADEA").

15

Here, Stucke complained to Brooks about the unfairness of Brooks's promotion to the position of Acting Assistant Director despite the fact that Brooks did not have a Bachelor's degree. Stucke also threatened to file a lawsuit. He alleges that his complaint to Brooks constituted protected activity under Title VII. At no time, however, did Stucke explicitly or implicitly allege that race was the reason that Brooks acquired the position. *See* Stucke Dep. 258:4-259:10. Nor did Stucke indicate that his lawsuit was predicated on the existence of race discrimination. *See id.* Stucke's mere reference to filing a lawsuit does not warrant the inference that his lawsuit was based on race discrimination. Complaints can be lodged and lawsuits can be filed for a number of different reasons. Stucke's complaint of unfairness and his threat to file a lawsuit, without more, does not support a finding that Stucke engaged in protected activity. Accordingly, Plaintiff has failed to establish a prima facie case of retaliation.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. An appropriate Order follows.